UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HISCOX DEDICATED CORPORATE          §
 MEMBER LTD.,                       §
                                    §
        *Plaintiff*,                §
                                    §
v.                                  §          CIVIL ACTION H-08-3411
                                    §
PARTNERS COMMERCIAL REALTY, L.P., *et al.*,  §
                                    §
        *Defendants*.               §


## ORDER

Pending before the court is defendants Partners Commercial Realty, L.P., d/b/a NAI Houston's ("NAI") and Jim Pratt's ("Pratt") motion for summary judgment, seeking a declaration that plaintiff Hiscox Dedicated Corporate Member Ltd. ("Hiscox") has a duty to defend NAI and Pratt in a lawsuit pending in the 133rd District Court in Harris County, Texas ("Underlying Suit"), pursuant to a professional liability errors and omissions insurance policy ("Policy"). Dkt. 7. In response, Hiscox contends that it has no duty to defend NAI and Pratt, primarily based on exclusions contained in the Policy, and seeks a declaratory judgment to that effect. Relying on the same reasoning, Hiscox has also filed a cross-motion for summary judgment, seeking a declaration that it has no duty to indemnify NAI and Pratt in the Underlying Suit. Dkt. 8.

Having reviewed the parties' motions, record, and applicable law, the court DENIES defendants' motion for summary judgment (Dkt. 7) and GRANTS plaintiff's cross-motion for summary judgment (Dkt. 8). Further, because the court finds that no duty to defend or indemnify exists, the court ORDERS that NAI and Pratt's counterclaim be DISMISSED with prejudice. Dkt. 6.

# I. BACKGROUND

## 1. The Underlying Suit

In March 2008, a group of investors ("Underlying Plaintiffs") filed the Underlying Suit against NAI, Pratt, Henry Altman ("Altman"), and Anthony Rao ("Rao") (collectively, "Underlying Defendants") in the 133rd Judicial District Court of Harris County, Texas.[1]  The Underlying Suit arose from the Underlying Plaintiffs' purchase of interests in a Texas limited partnership, B&A Development Group, L.P. ("B&A").  The *sole* project of B&A was the development of an office and restaurant complex in the Woodlands, Texas ("Project").  Dkt. 7, Ex. A.  The Underlying Plaintiffs contend that the Underlying Defendants concocted a scheme to defraud the Underlying Plaintiffs by using the Project as the sole vehicle for inducing the Underlying Plaintiffs to invest in B&A and then diverting the investments from B&A to themselves.  Dkt. 7.  NAI and Pratt dispute the facts as alleged, disclaim the existence of an overarching scheme, and maintain that their work related exclusively to the Project.  Dkt. 8.

But, according to the allegations in the state court petition ("Petition"), the Underlying Defendants presented themselves to the Underlying Plaintiffs as a "team" of professionals and referred to themselves as the "developers" of the Project.  Dkt. 7.  As part of the team, NAI and Pratt provided "real estate experience," "financial forecasting," and "investor guidance."  *Id.*  Specifically, NAI and Pratt prepared an "Overview and Analysis" brochure for the Project.  In the brochure, NAI and Pratt  purportedly projected construction costs at unrealistically low levels, presented financial projections based on unreasonably high rents and assumptions about cash flow, failed to adequately

---

[1] The Underlying Suit is styled *William Christian Croom, et al. v. Partners Commercial Realty, L.P., d/b/a NAI Houston, et al.*

2

analyze the availability of construction loan funds and disclose employment contracts that diverted funds to two of the Underlying Defendants, and omitted reference to Pratt and NAI's role as "brokers" who purportedly received a commission each time a new investor purchased an interest in B&A.  The brochure was attached to a "Confidential Private Placement Memorandum," which the Underlying Plaintiffs also maintain was deceptive, and provided to prospective investors.  *Id.*

Ultimately, the Project failed when B&A was unable to obtain construction financing.  The Underlying Plaintiffs maintain that working capital was depleted due to covert payments to Pratt and the exorbitant entertainment, travel, and salary expenses of Altman and Rao.  The Underlying Plaintiffs then filed the Underlying Suit, which includes claims of securities fraud against Pratt, Rao, and Altman; aiding and abetting securities fraud against NAI; aiding and abetting securities fraud against Pratt; and negligent misrepresentation against Pratt and NAI.[2]  The Underlying Plaintiffs seek to have their purchases of interests in B&A rescinded and their purchase monies returned.  *Id.*

## 2. The Declaratory Judgment

Hiscox, as the insurer of the Policy at issue, filed suit in the Southern District of Texas, on November 17, 2008, seeking declarations that it has no duty to defend or indemnify NAI and Pratt in the Underlying Suit.  Dkt. 1.  In their answer, NAI and Pratt counterclaimed, seeking a contrary declaration that Hiscox has a duty to defend NAI and Pratt.  Dkt. 6.

## 3. The Policy

NAI and Pratt, as the Policy's insured and an employee of the Policy's insured, now seek a declaration that Hiscox has a duty to defend them in the Underlying Suit.  The Policy, a claims made and reported, professional liability errors and omissions policy, provides coverage for "Professional

---

[2] B&A filed for bankruptcy and, therefore, was not named in the Underlying Suit.

Services," which are defined as "the performance of services as a real estate agent/broker and/or property manager, of non-owned property and/or consulting and leasing, for others for a fee."  Dkt. 7, Ex. B.

Hiscox relies on two separate exclusions in the Policy in denying the existence of coverage, and, thus, a duty to defend or indemnify: (1) an exclusion for claims based upon or arising out of violations of various federal and state securities laws and regulations ("Securities Exclusion") and (2) an exclusion for claims arising from the sale of limited partnerships and interests therein ("Partnership Exclusion").  Dkt. 8.

With respect to the Securities Exclusion, the express language of the Policy provides that:

> This Policy does not apply to and Underwriters shall have no obligation to pay any Damages, Claim Expenses, or Supplemental Payments for any Claim:
> . . .
> based upon or arising out of any violation of the Securities Act of 1933 as amended; the Securities Exchange Act of 1934 as amended; any state blue sky or securities laws or amendments thereto; any similar state or federal laws or amendments thereto; or any regulation issued pursuant to any of the foregoing statutes . . . .

Dkt. 7, Ex. B.  And, the Partnership Exclusion states that:

> In consideration of the premium charged, it is hereby understood and agreed that this Policy does not apply to and Underwriters shall have no obligation to pay any Damages, Claim Expenses or Supplemental Payments for any Claim:
> 1. based upon or arising out of or connected with the performance of or failure to perform services as a[ ] . . . property developer;
> . . .
> 5. based upon or arising out of or connected with the formulation, promotion, syndication, offer, sale or management of any limited or general partnership or any interest therein.

*Id.*

Damages are defined as a "monetary judgment or award the insured is legally obligated to pay for any covered Claim (including pre- or post-judgment interest) or a settlement negotiated by

Underwriters with the consent of the insured." And, Claim Expenses encompass "all reasonable and necessary fees, costs and expenses, including the fees of attorneys and experts, incurred by or on behalf of Underwriters in the investigation, defense, appeal and settlement of a Claim." *Id.*

## II. ANALYSIS

### A. Summary Judgment

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). Upon a defendant's motion for summary judgment, the plaintiff "must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." FED. R. CIV. P. 56(e). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden

5

does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof

6

based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869,

872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## B. Insurance Contract Interpretation: Generally

"Texas courts interpret insurance policies according to the rules of contract construction."

*de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex. App.—Houston [14th Dist.] 2005, pet.

denied).  The primary objective of the court is to ascertain the parties' intent, as expressed in the

written instrument.  *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).  "[T]he

parties' intent is governed by what they said, not by what they *intended* to say but did not." *Nautilus*

*Ins. Co. v. Country Oaks Apartments, Ltd.*, — F.3d —, 2009 WL 1067587, at *2 (5th Cir. Apr. 22,

2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation

omitted).

"If the insurance policy is worded so that it can be given a definite meaning or certain legal

meaning, then the policy is not ambiguous.  If the policy is not ambiguous, then the court construes

the policy as a matter of law." *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, — S.W.3d —,

2008 WL 746522, at *4 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, no pet. h.) (citing *Am. Mfrs.*

*Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)) (internal citation omitted).  An

ambiguity exists where a policy is susceptible to more than one meaning.  *Coker v. Coker*, 650

S.W.2d 391, 393 (Tex. 1983).  Courts interpreting contractual provisions give terms their plain,

ordinary, and generally accepted meanings, unless otherwise defined by the parties.  "'Both the

insured and the insurer are likely to take conflicting views of coverage, but neither conflicting

expectations nor disputation is sufficient to *create* an ambiguity.'" *Nat'l Union Fire Ins. Co. of*

7

*Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 932 (S.D. Tex. 2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)).   "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 932; *see also Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex. App.—Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded").   And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931.

Two distinct duties are at issue in the motions for summary judgment pending before the court: the duty to defend and the duty to indemnify.   The duty to defend determination centers on whether the factual allegations in the petition support a covered claim; whereas, the duty to indemnify is established based on the facts proven in the underlying suit.   *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006).   Therefore, the duty to defend is broader, thus an insurer may have a duty to defend, yet no duty to indemnify.   *Solvent Underwriters Subscribing to Energy Ins. Intern., Inc. v. Furmanite Am., Inc.*, — S.W.3d —, 2009 WL 280500, at * 4 (Tex. App.—Houston [14th Dist.] Feb. 5, 2009, no pet. h.).

### C. Insurance Contract Interpretation: Duty to Defend

#### *1. Standard*

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins.*

8

*Co.*, 279 S.W.3d 650, 654 (Tex. 2009).  "Resort to evidence outside the four corners of these two documents is generally prohibited."  *Nautilus Ins. Co.*, 2009 WL 1067587, at *2.  "The duty to defend does not depend upon the truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend . . . .'"  *Id.* (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006)).

When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured.  *Pine Oak Builders, Inc.*, 279 S.W.3d at 654.  However, if the facts in the pleadings give rise to any claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims.  *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004).  Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into the pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage."  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997).  The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931; *see also Am. Auto, Inc. v. Mayfield*, 287 F. Supp. 2d 661, 664 (N.D. Tex. 2003).  Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty."  *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

But, "when the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend."  *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994); *see also Chapman v. Nat'l Union Fire Ins.*

9

*Co. of Pittsburgh*, 171 S.W.3d 222, 228 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("An insurer has no duty to defend if a petition against an insured alleges facts excluded by the policy."). When the insurer argues that the policy exclusion excepts coverage, the insurer bears the burden of demonstrating that the exclusion applies. *Utica Nat. Ins. Co. of Tex.*, 141 S.W.3d at 203. The Fifth Circuit has explained the burden shifting framework as follows:

> The insured bears the initial burden of showing that the claim . . . is potentially within the insurance policy's scope of coverage. If the insurer relies on the policy's exclusions to deny coverage, the burden shifts to the insurer to prove the exclusion applies. If the insurer is successful, the burden shifts back to the insured to show that an exception to the exclusion brings the claim . . . potentially within the scope of coverage under the insurance policy.

*Am. Auto. Inc.*, 287 F. Supp. 2d at 664–65 (quoting *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001)).

### 2. As Applied

"An errors-and-omissions policy is professional-liability insurance providing a specialized and limited type of coverage as compared to comprehensive insurance; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes, and errors inherent in the practice of the professions." *Am. Auto. Ins. Co. v. Grimes*, No. Civ.A.5:02-cv-066-C, 2004 WL 246989, at *9 (N.D. Tex. Feb. 10, 2004) (quoting *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 736 (Tex. App. —Ft. Worth 2003, no pet.)) (internal quotation omitted).

### a. Is the Claim Within Scope of Coverage?

The court begins its analysis by determining whether any of the claims asserted in the Underlying Suit could fall within the scope of the Policy's coverage. NAI and Pratt maintain that their "consulting" activities fall within the scope of Professional Services, as defined in the Policy:

"the performance of services as a real estate agent/broker and/or property manager, of non-owned property and/or consulting and leasing, for others for a fee."  Dkt. 7, Ex. B.

In the Petition, NAI and Pratt are cast in multiple roles.  For example, the Underlying Plaintiffs maintain that "Pratt and NAI were to provide financial forecasting and investor guidance, . . . and Pratt allegedly had real estate experience."  Dkt. 7.  The Underlying Plaintiffs also claim that the Underlying Defendants presented themselves as a "team" of "developers."  *Id.*  But, while NAI and Pratt contend that the Underlying Plaintiffs characterize them as "financial consultants," the opposite is true.  In fact, the Underlying Plaintiffs argue that "NAI and Pratt were *not* in fact 'financial consultants' to B&A but were, in fact, acting as *brokers* that were being paid a commission each time a new investor was induced to purchase an interest."  *Id.*  (emphasis added).  The varying descriptors and terminology utilized by the Underlying Plaintiffs in the Petition, as compared to the definition of Professional Services contained in the Policy, give rise to an ambiguity as to whether NAI and Pratt's activities fall within the scope of Professional Services; however, this is not the end of the court's inquiry.

*b.  Do the Exclusions Apply?*

Assuming *arguendo* that NAI and Pratt's activities constitute Professional Services, the Securities and Partnership Exclusions may nonetheless preclude coverage under the Policy.  NAI and Pratt proffer three arguments to support the existence of a duty to defend in the Underlying Suit, despite the Policy exclusions: (1) NAI and Pratt's conduct relates exclusively to the Project, and not to B&A, whereas the allegations in the Petition aver that damages arose from omissions and misrepresentations relating to B&A; (2) as a corollary, because the alleged misrepresentations related to the Project, rather than B&A, and neither NAI nor Pratt are in the business of selling securities,

11

the misrepresentations were not made in the course of defendant's business, as required to establish

a claim for negligent misrepresentation; and (3) broad interpretation of the exclusions, as suggested

by Hiscox, essentially renders the term Professional Services meaningless.  On review, however,

each argument fails.

Addressing the first two arguments concurrently, it is unreasonable to separate the Project

from B&A as an entity.  The Petition clearly indicates that the Project is B&A's *sole* project and

source of income.  Dkt. 7, Ex. A.  But, more importantly, the Petition, read in its entirety, reflects

an overarching scheme to allegedly obtain investment in B&A through the Project.  The Underlying

Plaintiffs contend that: the scheme was designed to defraud the investors through the purchase of

interests in B&A; Pratt participated in the development of this scheme; the Project was the means

through which the Underlying Plaintiffs were enticed into purchasing interests in B&A; NAI and

Pratt designed the brochure promoting the Project to encourage investments in B&A; and Pratt

received a commission each time an investor purchased an interest in B&A.  *See* Dkt. 7, Ex. A

("Pratt, Rao, and Altman devised a scheme for developing a . . . complex . . . .  From the outset,

Pratt, Rao, and Altman planned to use the . . . Project as a vehicle to defraud potential investors and

to divert a substantial portion of invested funds to themselves."; "The fundamental concept was to

present to investors a 'team' of professionals.  Pratt and NAI were to provide financial forecasting

and investor guidance, Rao was to provide 'restaurant expertise' and Pratt allegedly had real estate

experience."; "In order to entice investors to purchase interests in B&A, NAI and Pratt prepared a

brochure entitled 'Overview and Analysis' for the . . . Project.  Although not specifically mentioning

that the investment would be through B&A, the only business of B&A and its sole source of income

was the Project.  Therefore, the only purpose of the brochure was to attract investment through the

purchase of limited partnership interests in B&A."; The brochure "[f]ail[ed] to disclose that NAI and Pratt were not in fact 'financial consultants' to B&A but were, in fact, acting as brokers that were being paid a commission each time a new investor was induced to purchase an interest."). As plead, the Underlying Plaintiffs link NAI and Pratt's conduct to B&A, and not simply the Project.

With respect to the third argument, the previously cited excerpts from the Petition bring the claim within the purview of the Securities and Partnership Exclusions. NAI and Pratt argue that the terms "based upon," "arising out of," and "connected with" are ambiguous because they are not defined within the Policy. However, NAI and Pratt have overlooked the extensive case law defining these terms, as well as the maxim that undefined terms should be given their ordinary meaning when not otherwise defined by the parties. Therefore, the failure to define a term in the Policy explicitly, does not, alone, render it ambiguous.

"In Texas, the language 'arising out of' in a policy exclusion leads to 'a broad, general, and comprehensive interpretation' of the exclusion." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931 (citing *Scottsdale Ins. Co. v. Tex. Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999)). Further, "[the Texas Supreme Court has] held that 'arise out of' means that there is simply a 'causal connection or relation,' . . . which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat. Ins. Co. of Tex.*, 141 S.W.3d at 203 (internal citation omitted). These holdings are widely noted in the Fifth Circuit's jurisprudence as well. *See id.* (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998) and *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951) ("'Arising out of' are words of much broader significance than 'caused by.'")). "[T]he claim 'need only bear an incidental relationship to the described conduct for the exclusion to apply.'" *Nutmeg*

13

*Ins. Co. v. Clear Lake City Water Authority*, 229 F. Supp. 2d 668, 691 (S.D. Tex. 2002) (quoting *Scottsdale Ins. Co.*, 173 F.3d at 943).  Moreover, where covered and excluded conduct combine to cause the harm alleged, "[b]ecause the two causes cannot be separated, the exclusion is triggered." *Utica Nat'l Ins. Co.*, 141 S.W.3d at 204.

Other courts have concluded that these same phrases, "arising out of" and "based upon," are not ambiguous and clearly express the parties' intent.  *Waffle House, Inc.*, 114 S.W.3d at 607; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 932 (finding the exclusion for coverage phrased as: "arising out of, based upon, attributable to, or in any way involving, directly or indirectly" the discharge of pollutants to be unambiguous).  This court concurs, and finds that the language contained in the Securities and Partnership Exclusions is unambiguous.  Therefore, it proceeds by analyzing the exclusions at issue.

Considering the Securities and Partnership Exclusions against the backdrop of case law, it is clear that the Petition alleges facts that create a "causal connection or relation" between the actions of NAI and Pratt and the damages asserted by the Underlying Plaintiffs.  The Securities Exclusion provides that Hiscox has no obligation to pay Damages, Claim Expenses, or Supplemental Payments for claims "based upon or arising out of any violation of the Securities Act of 1933 as amended; the Securities Exchange Act of 1934 as amended; any state blue sky or securities laws or amendments thereto; any similar state or federal laws or amendments thereto; or any regulation issued pursuant to any of the foregoing statutes."  Dkt. 7, Ex. B.  The Underlying Plaintiffs have alleged that sales of the limited partnership interests in B&A constitute "securities" under Article 581-1 *et seq.* of the Revised Civil Statutes of Texas ("Texas Securities Act").  Dkt. 7, Ex. A.  And, as outlined above, the Underlying Plaintiffs claimed that the Underlying Defendants, including NAI and Pratt, schemed

14

to lure investors into purchasing interests in B&A though the Project and, specifically by creating the brochure.

Utilizing similar terminology to that in the Securities Exclusion, the Partnership Exclusion precludes coverage for claims "based upon or arising out of connected with the formulation, promotion, syndication, offer, sale or management of any limited or general partnership or any interest therein." *Id.* The previously cited excerpts from the Petition, likewise, reflect a "causal connection or relation" between NAI and Pratt's conduct and the damages suffered by and causes of action asserted by the Underlying Plaintiffs, even if the link is not considered "direct" and the conduct was not the "proximate" cause of the Underlying Plaintiffs' injuries.

NAI and Pratt suggest that the negligent misrepresentation claim is separate from the securities fraud-based claims, but the same conduct gives rise to both claims.  "Where the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not [itself] engage in the prohibited conduct." *See Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 99 F.3d 695, 704 (5th Cir. 1996).  Moreover, the negligent misrepresentation claim, as pleaded, states that the allegedly false information was to guide the Underlying Plaintiffs in connection with the investments in B&A.  Although NAI and Pratt suggest that the sale of securities is not within their "ordinary business," such argument only weakens their other positions, namely that real estate work is almost always related to the sale of limited partnership interests and that the creation of the brochure falls within the definition of Professional Services.  Accordingly, the claims are excluded.

NAI and Pratt also argue the Securities Exclusion was intended to "avoid coverage if the insured went outside of his normal business in the real estate consulting field and began selling securities." Dkt. 7. Yet, NAI and Pratt do not cite to excerpts or portions of the Policy that support such an interpretation. Even if NAI and Pratt's proposed interpretation of the Securities Exclusion was reasonable, coverage would nonetheless be precluded under the Partnership Exclusion.

With respect to the Partnership Exclusion, NAI and Pratt maintain that "real estate work . . . is almost always 'related to' the sale of a limited partnership interest in that limited partnerships are very often created for the purpose of purchasing commercial real estate." Dkt. 7. Nonetheless, the Policy is to be interpreted by what the parties *actually* said and not what they *intended* to say. *Nautilus Ins. Co.*, 2009 WL 1067587, at *2. And, here, the exclusion is quite specific. Had NAI and Pratt sought to acquire coverage for Professional Services related in any way to limited and general partnerships, they could have contracted for the desired coverage. Yet, they did not and, to the contrary, the Policy expressly excludes such coverage. Despite NAI and Pratt's arguments that the Partnership Exclusion does not apply, they fail to demonstrate how the clause is "susceptible to more than one reasonable interpretation." *See Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 925 (N.D. Tex. 2009) ("Defendants . . . fail to explain clearly what their interpretation of the exclusion is, other than to argue that is does not include any of the claims asserted . . . ."). Therefore, the court finds that the claims are excluded under the Policy. Yet, there is one final inquiry to be made.

*c. Is there an Exception to the Exclusions?*

Although the court has found that the claims are excluded under the Policy, if an exception to the exclusions exists, the claims may be within the scope of the Policy. NAI and Pratt have

identified no exceptions to the exclusions, nor are any exceptions apparent from the express language of the Securities and Partnership Exclusions and the allegations in the Petition.  Rather, NAI and Pratt challenge the facts as alleged by the Underlying Plaintiffs to support their position that coverage exists and the exclusions do not apply.  Thus, the court concludes that Hiscox has no duty to defend NAI and Pratt in the Underlying Suit.

## D. Insurance Contract Interpretation: Duty to Indemnify

In its cross-motion for summary judgment, Hiscox seeks a declaration from the court that, in addition to declaring that Hiscox has no duty to defend, Hiscox also has no duty to indemnify NAI and Pratt for any judgment rendered in the Underlying Suit.  Dkt. 8.  NAI and Pratt did not respond to Hiscox's arguments regarding the duty to indemnify.

"Unlike the duty to defend, which arises when a petition seeking damages alleges facts that potentially support claims covered by a liability policy, the duty to indemnify arises from proven, adjudicated facts."  *Classic Performance Cars, Inc. v. Acceptance Indem. Ins. Co.*, 464 F. Supp. 2d 652, 663–64 (S.D. Tex. 2006) (citing *Hartrick v. Great Am. Lloyds Ins. Co.,* 62 S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2001, no pet.) and *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997)).  Thus, the Texas Supreme Court has recognized that it may be necessary to defer resolution of the question of coverage, and thus the duty to indemnify, until factual questions have been resolved at trial.  *Utica Nat'l Ins. Co.*, 141 S.W.3d at 201 (citing *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)).  However, when "the insurer has no duty to defend, 'the duty to indemnify is justiciable . . . [if] the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'"  *Id.* at 664

17

(quoting *Farmers Tex. County Mut. Ins. Co.,* 955 S.W.2d at 84).  The analog of this argument, which has been recognized by other courts, therefore, is that an insurer with no duty to defend invariably owes no duty to indemnify.  *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001).  Since a verdict in the Underlying Suit favoring the Underlying Plaintiffs would necessarily implicate either the Securities and Partnership Exclusions, or both, coverage is precluded by the express and unambiguous terms of the Policy.  Therefore, the court finds that Hiscox has no duty to indemnify NAI or Pratt in the Underlying Suit.

**E. Counterclaims of NAI and Pratt**

NAI and Pratt have asserted a counterclaim seeking a declaration that Hiscox owes a duty to defend NAI and Pratt in the Underlying Suit.  Dkt. 6.  Because the court finds that no duty to defend or indemnify exists, the court dismisses NAI and Pratt's counterclaim.

### III. CONCLUSION

For these reasons, the court concludes that Hiscox owes neither a duty to defend nor indemnify NAI and Pratt.  Therefore, NAI and Pratt's motion for summary judgment (Dkt. 7) is DENIED and Hiscox's cross-motion for summary judgment is GRANTED (Dkt. 8).  Further, NAI and Pratt's counterclaim (Dkt. 6) is DISMISSED with prejudice.

Signed at Houston, Texas on June 23, 2009.

Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY